UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF MASSACHUSETTS *ex rel.* JULIO ESCOBAR and CARMEN CORREA, ADMINISTRATRIX OF THE ESTATE OF YARUSHKA RIVERA<br><br>Relators–Plaintiffs,<br><br>v.<br><br>UNIVERSAL HEALTH SERVICES, INC., UHS OF DELAWARE, INC., and HRI CLINICS, INC.<br><br>Defendants. | C.A. No. 11-CV-11170-DPW |

### DECLARATION OF CAROLYN MASSHARDT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Carolyn Masshardt, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

1. I am a graduate of Boston College School of Social Work, and have held a Licensed Independent Clinical Social Work ("LICSW") license since July 24, 1984.

2. I am currently the Director of Field Education for the School of Social Work at Bridgewater State University. In my current role at Bridgewater State University, I assess the ability of organizations to provide supervision to meet professional, regulatory and industry standards. Additionally, I teach social work practice classes at the undergraduate and graduate levels, and, for the past ten years, have been the lead instructor for a year-long post-master's in Social Work course "Seminar in Field Supervision."

3. Prior to entering academia, I served as the Director of Clinical Services for two mental health clinics associated with North Suffolk Mental Health, and served as Director of the Berkley House

Program at McLean Hospital. In these roles, I provided direct clinical supervision to social work interns, and other unlicensed personnel providing mental health services.

4. Since 1992, I have been a member of the National Association of Social Workers ("NASW"), and have also served on the NASW-Massachusetts Chapter Board of Directors.

5. I was retained by the Relators and the Commonwealth of Massachusetts (collectively the "Plaintiffs") to determine whether unlicensed and non-independently licensed clinicians who treated Massachusetts Medicaid beneficiaries at the outpatient mental health clinic Arbour Counseling Services, Lawrence ("Arbour Lawrence"), were qualified to render services. As outlined in my expert report, I determined that all of the unlicensed and non-independently licensed clinicians who practiced at Arbour Lawrence between 2005 and 2011 were not qualified to provide any services to MassHealth beneficiaries because Defendants failed to provide clinical supervision.

6. A true and accurate copy of my expert report is attached. If called to testify at trial in this case, I would testify under oath as to the sum and substance contained in my expert report.

7. In support of their motion for summary judgment, Defendants attached nine exhibits claiming that each evidenced clinical supervision of an unlicensed clinician. *See* McLane Declaration. Exs. 47-50, 73-77. These exhibits contained portions of treatment records for patients treated at Arbour Lawrence, and included Multi-Disciplinary Team ("MDT") records, treatment plans, and discharge summaries.

8. As explained in my report, neither MDT review nor co-signatures within a patient file are equivalent to clinical supervision. Clinical supervision records are kept separate from patient records, and patient records ordinarily do not evidence whether clinical supervision occurred. Masshardt Rep. pp. 28-29, 37-39.

9. Patient records, however, may evidence clinical supervision if there are notations documenting supervisory input, such as notes stating "discussed with a supervisor…" or "changed treatment based on clinical supervision discussions." *See* Masshardt Expert Rpt at 28-31. I inspected the exhibits to see if such references were contained in them. For the purpose of this review I considered

2

evidence of clinical supervision to be any evidence that a meeting occurred where a supervisee and a qualified supervisor discussed a patient's treatment.

10.  None of the nine exhibits documented clinical supervision or evidenced that clinical supervision occurred.

11.  Each of the nine exhibits were taken from a larger patient record which had been produced by the Defendants in discovery. I had been provided those records in connection with the preparation of my expert report. In connection with the review I performed for this affidavit, I was given the complete patient record for each of the patients identified in the nine exhibits, and reviewed the entire record to see if clinical supervision was documented elsewhere in the patient's record, or whether there was some evidence in the entire record that the treating clinician had received clinical supervision.[1] Below, I state what I observed in each of the nine exhibits and the corresponding complete patient record produced by the Defendants. To determine whether such notations existed, I reviewed the entire treatment record of these exhibits.

12.  Exhibit 47 is a discharge summary of patient YD[2] that is countersigned by Edward Keohan. The discharge summary provides no evidence that Mr. Keohan met with the treating clinicians, Sarah Birmingham, or ever discussed the patient's treatment with Ms. Birmingham. There is no evidence that any meeting occurred.

13.  I also examined the entire treatment record of YD to determine whether other notations within the patient filed evidence clinical supervision between the treating clinician and a qualified

---

[1] Similarly, when preparing my expert report, I reviewed the entirety of a patient's treatment record and looked for any notation that might evidence the existence of a clinical supervisory relationship. I could find none in any of the records I reviewed at that time.

[2] All patient names are pseudo names to protect the identity of the patients treated by Defendants.

3

supervisor. (HRI0074681-727). I could find no notations or other evidence within the file that Ms. Birmingham was clinically supervised by a qualified supervisor.[3]

14. Exhibit 48 was a treatment plan for patient AR, countersigned by Mr. Keohan. The treatment plan provides no evidence that Mr. Keohan met with the treating clinician, Yakira Cook, or ever discussed the patient's treatment with Ms. Cook. There is no evidence that any meeting occurred.

15. I also examined the entire treatment record of AR to determine whether other notations within the patient file evidence clinical supervision between the treating clinician and a qualified supervisor. (HRI0281444-482). I could find no notations or other evidence within the file that Ms. Cook was clinically supervised by a qualified supervisor.[4]

16. Exhibit 49 was a treatment plan for patient DA, countersigned by Janet Sandborn as well as an MDT review form signed by the MDT Team. These documents provide no evidence that Ms. Sandborn, or any individual from the MDT team, met with the treating clinician, Maria Pereyra, or ever discussed the patient's treatment with Ms. Pereyra.[5]

17. I examined the entire treatment record of DA to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0142652-656). I could find no notations or other evidence within the file that Ms. Pereyra received clinical supervision from a qualified supervisor.

18. Exhibit 50 was an individualized action plan and MDT review for patient AH, countersigned by Mr. Keohan.[6] These documents provide no evidence that Mr. Keohan met with the

---

[3] Some of the records within this patient's file are not counter signed by any licensed clinicians even though there were forms which called for additional signatures by a "Supervisor". *See* e.g., HRI0074691, 0074708, 0074720, 0074724.

[4] Some of the records within this patient's file are not counter signed by any licensed clinicians. *See* e.g., HRI0281472.

[5] The MDT review form contained in Exhibit 49 (and offered by Defendants as evidence of clinical supervision (HRI0142656)) indicated that the MDT team had recommendations for the treating clinician. There is no evidence, however, that there was any follow up with treating clinician and she never countersigned the MDT review sheet.

[6] The MDT review offered by Defendants as evidence of clinical supervision (HRI0122286) was only signed by Ed Keohan—no other member of the MDT team countersigned the form.

treating clinician, Nora Fonseca, or ever discussed the patient's treatment with Ms. Fonseca. There is no evidence that any meeting occurred.

19. I examined the entire treatment record of AH to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0122283-86). I could find no notations or other evidence within the file that Ms. Fonseca received clinical supervision from a qualified supervisor.

20. Exhibit 73 was a treatment plan for patient MG, countersigned by Mr. Keohan. The treatment plan provides no evidence that Mr. Keohan met with the treating clinician, Andres Nino, or ever discussed the patient's treatment with Mr. Nino. There is no evidence that any meeting occurred.

21. I examined the entire treatment record for MG to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0117076-93). I could find no notations or other evidence within the file that Mr. Nino received clinical supervision from a qualified supervisor.[7]

22. Exhibit 74 was an MDT review and summary of out-patient treatment for patient JG, which were both countersigned by Mr. Keohan. These documents provide no evidence that Mr. Keohan met with the treating clinician, Mr. Nino, or ever discussed the patient's treatment with Mr. Nino. There is no evidence that any meeting occurred.

23. I examined the entire treatment record for JG to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0088605-794). I could find no notations or other evidence within the file that Mr. Nino received clinical supervision from a qualified supervisor.

24. Exhibit 75 was an MDT review for patient RG that was countersigned by only two of the three members of the MDT review team. The MDT review form provides no evidence that any member of

---

[7] The MDT reviews within this patient's file are completely blank, and are not signed by any member of the MDT team *See* HRI0117088, 117093

the MDT team met with the treating clinician, Mr. Nino, or ever discussed the patient's treatment with the treating clinician.

25. I examined the entire treatment record for RG to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0049673-897). I could find no notations or other evidence within the file that Mr. Nino received clinical supervision from a qualified supervisor.

26. Exhibit 76 was a treatment plan for patient CM that was countersigned by Mr. Keohan. The treatment plan provides no evidence that Mr. Keohan met with the treating clinician, Dulce Fiore, or ever discussed the patient's treatment with Ms. Fiore. There is no evidence that any meeting occurred.

27. I examined the entire treatment record for CM to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0053111-37). I could find no notations or other evidence within the file that Ms. Fiore was clinically supervised by a qualified supervisor.[8]

28. Exhibit 77 was a summary of outpatient treatment for patient MC, countersigned by Mr. Keohan. The summary of treatment provides no evidence that Mr. Keohan met with the treating clinician, Ms. Fiore, or ever discussed the patient's treatment with Ms. Fiore. There is no evidence that any meeting occurred.

29. I examined the entire treatment record for MC to determine whether other notations within the patient file evidenced clinical supervision between the treating clinician and a qualified supervisor. (HRI0095911-46). I could find no notations or other evidence within the file that Ms. Fiore received clinical supervision from a qualified supervisor.[9]

---

[8] Some of the records within the file are not counter signed by any licensed clinicians. *See* e.g., HRI0053130. Additionally, another treatment plan within the patient file is completely blank, and not signed by any member of the MDT team. HRI0053114.

[9] Some of the records within the file are not counter signed by any licensed clinicians. *See* e.g., HRI0095937-38. Additionally, the treatment plan within the patient file is completely blank, and not signed by any member of the MDT team. HRI0095940.

30. In sum, I could find no evidence in these exhibits that clinical supervision was provided to the treating clinicians. Absent any supervision records or case notations documenting supervisory input, there is no evidence that the clinician received clinical supervision.

Signed under the pains and penalties of perjury, this 22nd__ day of July, 2019.

*Carolyn Masshardt*  7/22/19
Carolyn Masshardt, LICSW